JACOB PURSLEY

*v.*

WILLIAM A. FORTH *et al.*

1.  CHANCERY—*will not relieve against party's own acts.* If a junior mortgagee pays off a senior mortgage, but, instead of having it canceled, treats the transaction as a purchase, and has the mortgage assigned to himself, and makes an assignment of it in order that a sale may be made under it, and not only assents to a sale being made under it, by being present and making no objection, but participates therein by bidding on the property, a court of equity will not interfere in his behalf, and set aside the sale on the ground that the mortgage debt had been paid, although the result of such sale is to deprive him of the benefit of his junior mortgage.

2.  MORTGAGE SALE—*purchaser must comply with terms.* Where the terms of a mortgage sale prescribed by the mortgage are cash, the purchaser must pay cash, and a note of the party entitled to the proceeds of the sale is not cash, and a tender of such note is not a compliance with the terms of the sale.

APPEAL from the Circuit Court of Clay county; the Hon. JAMES C. ALLEN, Judge, presiding.

On the 21st of April, 1868, William A. Forth sold and conveyed to Mark Hails lot 4, in block 20, in South Xenia, Ill., for $3500. In payment, Hails transferred to Forth a promissory note, on Kenny & Patton, for $900, secured by mortgage on real estate, and also three notes, executed by one Lyon to Hails, dated April 1, 1868, for $800 each, due in one, two and three years, respectively, and secured by mortgage on certain real estate in Mt. Vernon, Ill.

To better secure the payment of the said Kenny & Patton and Lyon notes so taken by Forth, Hails executed back to Forth a mortgage on lot 4, in block 20, in Xenia. This is hereafter referred to as the collateral mortgage.

On the 21st of April, 1868, Hails, being indebted to Forth in the sum of $300, executed to him a second mortgage on this lot 4, in block 20, in Xenia.

On the 1st day of December, 1868, Hails, being indebted to Jacob Pursley, the appellant, in the sum of $1200, executed

to him a trust deed on this Xenia property, to secure the payment of that sum.

Thus, there were three mortgages on this Xenia property—the collateral mortgage given to Forth to secure the Kenny & Patton and Lyon notes, the $300 mortgage to Forth, and the $1200 mortgage to Pursley.

After the transfer of the three Lyon notes to Forth, as above, they, by assignment, became the property of one John Keen, as also one prior note of Lyon, for $600, due in seven months, of the same series of four notes given by Lyon, secured by the same mortgage.

At the November term, 1869, of the Jefferson circuit court, Keen obtained a decree of foreclosure of the Lyon mortgage on the Mt. Vernon property to secure the Lyon notes, for $1640, the amount of the first ·two notes, which were then due, the decree of sale being made subject to the two outstanding notes of $800 each, not then due.

As these Lyon notes were collaterally secured in their payment by this collateral mortgage on the Xenia property, and Forth and Pursley had each a subsequent mortgage on this Xenia property—one for $300, the other for $1200—they were desirous to have the Lyon notes satisfied out of the Mt. Vernon property, and the incumbrance of the collateral mortgage on the Xenia property removed from that property, so that their two $300 and $1200 mortgages might remain as the sole incumbrances on the Xenia property; to effect which object, there was an arrangement entered into that, at the foreclosure sale of the Mt. Vernon property, Forth and Pursley should bid off that property for the amount of the decree, and pay to Keen the two outstanding $800 Lyon notes. The Mt. Vernon property was accordingly bid off at the sale, in the name of Forth, at the amount of the decree. Forth and Pursley each paid one-half the amount. Subsequently, they paid to Keen the two outstanding $800 notes, each paying one-half, and Forth conveyed to Pursley the one undivided half of the Mt. Vernon property. Keen assigned to Forth and Pursley the

two notes and both mortgages—the Lyon mortgage and the collateral mortgage.

Pursley afterwards bought the $300 mortgage on the Xenia property from Forth.

On the 25th day of November, 1872, Pursley sold the $1200 and the $300 mortgages to Sarah Burkitt, one of the appellees, and a $300 chattel mortgage, for $2000, that being their amount with interest, for which Mrs. Burkitt gave Pursley her note for $1200 and a note for $800 secured by mortgage on real estate. At her request, he afterward assigned to her the collateral mortgage, informing her it was satisfied.

In December, 1872, Mrs. Burkitt advertised the Xenia property for sale, under the collateral mortgage, for non-payment of the two $800 Lyon notes received by Forth and Pursley from Keen, and also under the $1200 and $300 mortgages. These sales were enjoined, under a bill of injunction filed by Pursley and Hails, to which Burkitt and Forth were made parties, the bill setting up that the collateral mortgage had been paid and was discharged. The injunction suit was compromised by the making of the following agreement:

"XENIA, ILL., *May* 6, 1873.

"This certifies that undersigned have settled the suit pending in circuit court, entitled Jacob Pursley *et al. v.* W. A. Forth *et al.* Pursley takes W. A. Forth's interest in the Mt. Vernon property, and agrees to pay for it $3500, as follows: $1200 in notes and mortgages on Magnolia House, in Xenia, Ill.; his interest in two $800 notes, secured by mortgage, which W. A. Forth and Pursley bought of J. Keen, Sr.; an $800 mortgage on Sarah Burkitt's land in Wayne county, Ill., and $1500 in cash notes; Pursley to withdraw suit; each party pay their own cost."

Signed by Pursley and Forth.

On the 20th of June, 1873, the Xenia property, in pursuance of an advertisement by Burton & Filson, attorneys of Mrs. Burkitt, was sold by said attorneys, under the $1200 mortgage, pursuant to a power of sale therein contained, and bid off by Pursley for $1105. It was announced at the sale

by the crier that the property would be sold on the next day, under the collateral mortgage, or a prior mortgage. Pursley, though present, said nothing. On the next day, June 21, the same property was sold, under the collateral mortgage, to satisfy the two outstanding $800 Lyon notes, and bid off by Robert Forth, a brother of William A. Forth, for $950. Pursley was present at the sale, made no objection, and bid himself. Robert Forth paid the money and received a deed. One-half of the money was paid over to Mrs. Burkitt and the other half to William A. Forth.

After the sale on the 20th of June, under the $1200 mortgage, Pursley tendered to Mrs. Burkitt's attorneys in fact, in payment of his $1105 bid, the $1200 note of Mrs. Burkitt, and demanded a deed. They refused to accept the note, and demanded the money.

This bill in equity was filed by Pursley to set aside the deed made to Robert Forth under the sale by virtue of the collateral mortgage, on the ground that the mortgage had been paid and satisfied, and Robert Forth had notice thereof; and also, to compel the attorneys in fact of Mrs. Burkitt to accept her note of $1200 for Pursley's bid of $1105, and execute to him a deed of the property which he bid off under the $1200 mortgage.

The court below, on hearing, dismissed the bill. Pursley appealed.

Mr. B. B. Smith, and Mr. Gersham A. Hoff, for the appellant.

Messrs. Chesley & Hagle, for the appellees.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

The collateral mortgage on lot 4, in block 20, in Xenia, was given as well to secure the payment of the Kenny & Patton $900 note as of the Lyon notes. The bill alleges the Kenny & Patton note was paid. There is no distinct proof of it; but

the evidence, and the conduct and admissions of the parties, all proceed on the ground that the Lyon notes were the only ones that remained to be satisfied under the mortgage, and we have no doubt, under the evidence, that this Kenny & Patton note should be taken as satisfied.

On the payment, then, by William A. Forth and Pursley, to Keen, of the amount of the two only remaining $800 Lyon notes, the collateral mortgage, which had been given to secure the payment of the Lyon notes, was, in truth, paid and satisfied. So the parties might have treated it, and canceled the notes, and had satisfaction of the mortgage entered; but they did otherwise. They took an assignment of the notes and mortgage, thereby electing to give the transaction the form of a purchase and assignment, rather than a payment, and to keep the mortgage on foot. They were at liberty so to do.

The same purpose was manifested when Pursley assigned the collateral mortgage to Mrs. Burkitt, although he informed her that it was satisfied, and she does not appear to have paid any distinct consideration for the assignment.

But when Mrs. Burkitt comes to advertise the property for sale, under that mortgage, in December, 1872, Pursley has the contemplated sale enjoined. setting up, in his injunction bill, that the mortgage had been paid and satisfied.

A settlement was made of the injunction suit, but, in accordance with the strange determination manifested by Pursley throughout, to have this collateral mortgage kept on foot, it is made one of the terms of the settlement of this suit between Pursley and Forth, who was made a party to the suit, that Pursley should let the latter have Pursley's "interest in two $800 notes, secured by mortgage, which W. A. Forth and Pursley bought of J. Keen, Sr.," thus recognizing these two notes as still subsisting.

At the sale of this property, under the $1200 mortgage, on the 20th of June, 1873, Pursley was present, and bid off the property at $1105. The crier at that sale testifies that, before commencing it, he explained fully its terms and conditions; that he was making the sale subject to a prior mortgage, and that the sale on that mortgage would take place on the next

day. The prior mortgage was this collateral mortgage. Pursley uttered not a word of dissent. Had he intended thereafter to treat this collateral mortgage as a paid mortgage, and not as a subsisting one, it would have been well to have made it known on this occasion. It would have been an act of justice to the owner of the equity of redemption. Had Pursley announced that the prior mortgage had been paid—that he paid it himself—the property would, probably, have sold for a better price; but, then, as a bidder at the sale, he might have had, himself, to pay more for the property.

On the next day, June 21, the sale of the same property came off, under the collateral mortgage, in pursuance of advertisement previously given. The person making the sale announced that the mortgage was executed by Hails to W. A. Forth to secure the payment of the two $800 notes which were given as a part of the purchase money for the property. Pursley was present at the time, and made not a word of objection. He was even a bidder himself at the sale. The property was struck off to Robert Forth, as the highest bidder, at $950. He paid the money and took a deed.

After all this, Pursley now seeks, in contradiction of all his previous action, to have the transaction of taking up the two $800 Lyon notes in the hands of Keen adjudged to be a payment of the notes and a satisfaction of this collateral mortgage, and the sale under it, consequently, to be held invalid.

Although Pursley denies the fact, it is testified to by both William A. Forth and Aaron Burkitt, the husband of Mrs. Burkitt, that the foreclosure of, and sale under, the collateral mortgage, was by the direction of Pursley; that the reason he gave was, "to cut Hails out," as this was the oldest mortgage.

The case appears to be one of hardship, in the result. Appellant, by his action, has involved himself in a serious embarrassment. He appears to have utterly destroyed his rights under two mortgages, one for $1200 and the other for $300, on this property, by allowing it to be sold under a prior mortgage, which, in reality, had been paid and satisfied; but it is the consequence of his own voluntary, deliberate action.

There is nothing of fraud, accident, mistake of fact, or incapacity to act—cases where a court of equity interposes and grants relief. Courts do not assume the guardianship of men's interests, and undertake to relieve against their acts merely because they are ill-advised and prejudicial in effect. Although the mortgage had been satisfied, appellant chose to hold it out and deal with it as a subsisting mortgage. He took an assignment of it, made an assignment of it in order that a sale might be made under it, and acquiesced in the making of the sale. If the result bears hardly upon him, it is one to which he was consenting and aiding. *Volenti non fit injuria.* It does not suffice that Robert Forth, the purchaser, had notice and was informed by appellant that the mortgage was satisfied. This was neutralized by the fact that appellant, for whatever purpose, elected that the transaction should take the form of an assignment of the mortgage, instead of a payment of it; that he assented to the making of the sale under the mortgage, not only by being present and making no objection, but actually participating in the sale as a bidder. Forth was encouraged, by the conduct of appellant, to lay out his money in the purchase of the property under the mortgage. There is no ground for equitable relief. The principles of equity are all opposed thereto. Perry on Trusts, section 870. Appellant kept silence when it was his duty to speak. Equity will not now hearken to his complaint.

As respects the other branch of the case, the taking of the note of Mrs. Burkitt for appellant's bid at the sale under the $1200 mortgage, the terms of that sale, as prescribed by the mortgage, were cash. There was no power to sell for anything else than cash. The sale was made on the terms prescribed. Mrs. Burkitt's note was not cash, and the tender of the note was not a compliance with the condition of the sale, although the proceeds of the sale were coming to her. There is an allegation in the bill of her insolvency, but we see no proof of it in the record.

The decree must be affirmed.

*Decree affirmed.*